NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHRISTOPHER MORRIS, | : | |
| | : | |
| Plaintiff, | : | Civil No. 03-1001 (AET) |
| | : | |
| v. | : | **MEMORANDUM AND ORDER** |
| | : | |
| ATTORNEY GENERAL PETER | : | |
| VERNIERO, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter is before the Court on Defendants Peter Verniero, Paul Zoubek, Col. Carl A.

Williams, Trooper Glynn Moore, and Trooper Marc Stephens's (collectively, "Defendants")

Second Motion for Summary Judgment.  The Court has decided this Motion based upon the

submissions of the parties, without oral argument, pursuant to Fed. R. Civ. P. 78.  For the reasons

stated below, Defendants' Motion is granted.

### BACKGROUND

The Court incorporates herein the recitation of the facts in its Order, entered April 18,

2008, denying Defendants' first Motion for Summary Judgment.  In its April 18th Order, the

Court found that "Plaintiff's claims are for malicious prosecution, for conspiracy, a pattern,

policy, or custom of racial profiling, and racial discrimination, in connection with his criminal

prosecution," noting that a prior Order of the Court had "limited the scope of Plaintiff's second,

third, and fourth claims to those deriving from Plaintiff's malicious prosecution claim." (April 18th Order at 5-6.)  The Court supplements those recitations with additional facts only as they are relevant to the disposition of the instant Motion.  The following facts are taken from Plaintiff's Amended Complaint and Defendants' Statement of Material Facts, submitted pursuant to D.N.J. Local Civil Rule 56.1.[1]

Around midnight on July 1, 1997, Plaintiff Christopher Morris, and a companion, Andre London, were stopped on the New Jersey Turnpike ("Turnpike") by Defendants Moore and Stephens.  (Connell Cert., Ex. 8 (June 1, 1997 NJSP Investigation Report.))  Defendants Moore and Stephens observed the headlights of Plaintiff's vehicle, approaching at a high rate of speed in the left lane of the Turnpike, heading south.  (Id.)  The Troopers' K-55 radar confirmed that the vehicle was traveling in excess of the fifty-five (55) mile per hour posted speed limit.  (Id.)  After a short pursuit, Defendants Moore and Stephens pulled the vehicle to the shoulder of the Turnpike.  Defendant Moore observed that Plaintiff and Mr. London, the occupants of the stopped vehicle, were African-American, only after the two cars came to a halt.  (Connell Cert., Ex. 3 (Moore Dep.) 129:19-24.)

Defendant Moore approached the passenger side window.  Defendant Moore observed Plaintiff and Mr. London moving suddenly and furtively, that they appeared nervous, and that they were unable to tell Defendant Moore where they had been previously in the evening. (Connell Cert., Ex. 8.)  At this point, Defendant Moore directed Plaintiff to exit the vehicle.

---

[1]     Because Plaintiff has not opposed any of Defendant's facts, those facts that are supported by evidence are deemed admitted and true for the purposes of this Motion.  Longoria v. New Jersey, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001); Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000).

Plaintiff walked backwards to the rear of his vehicle.  (Id.)  Defendant Moore told Plaintiff that

he was going to conduct a pat-down of Plaintiff.  Defendant Moore felt a hard object below the

waistline of Plaintiff's pants near his groin, but was unable to confirm whether the object was a

weapon.  (Id.)  Defendant Stephens retrieved a large duct-taped package from Plaintiff's pants,

and when Defendant Moore asked Plaintiff what was in the package, Plaintiff admitted that it

contained cocaine.  (Id.)

Plaintiff's version of these events differs significantly, in that he asserts that he was not

speeding, that neither he nor Mr. London made any furtive movements either before or after

Defendant Moore approached the car, and that three pat-downs revealed nothing out of the

ordinary.  (Pl.'s Opp'n, Ex. D (Morris Dep.) 90, 95-96, 98, 167.)  Plaintiff contends that

Defendants Moore and Stephens planted the cocaine on him, and that he was stopped because of

unlawful racial profiling by the Troopers.  (Id., 99.)  Mr. London testified during his deposition

that no drugs were found on him, but stated that there was marijuana found in the car that

belonged to him.  (Pl.'s Opp'n, Ex. E (London Dep.) 81-82.)

Plaintiff testified at his deposition that Defendants Moore and Stephens did not make any

racially-charged statements during the stop and arrest.  (Connell Cert., Ex. 1 (Morris Dep.),

294:17-21.)  Plaintiff further testified that he had no personal knowledge that the Troopers used

racial profiling in their arrest of him, or others.  (Connell Cert., Ex. 1, 210:16-211:11, 227:19-

228:1.)  However, Plaintiff asserted his belief that Defendants Moore and Stephens had

unlawfully profiled him:

> [i]n my opinion – this is me, I think, yeah, they was profiling me. . . . What facts?
> The way how they acted, the procedure, how he came towards me, how he did it.
> It was unprofessional.  You know, I don't think he did it by the rules he was
> supposed to follow.  He just did it wrong.

(Defs.' Statement of Material Facts, ¶ 8.)  Plaintiff did not identify any discriminatory

motivations, or use of profiling, by Defendants Verniero, Zoubek, or Williams.  (Connell Cert.,

Ex. 1, 223:11-20.)

On August 28, 1997, a Mercer County Grand Jury indicted Plaintiff, charging him with

cocaine possession, and intent to distribute.  (Connell Cert., Ex. 16 (Mercer County Grand Jury

Indictment.))  Plaintiff's suppression motion was denied, as was a subsequent motion for

reconsideration, on the basis of an April 20, 1999 interim report ("Interim Report") issued by the

New Jersey Attorney General's Office ("AG"), that found "*de facto* discrimination by officers

who may be influenced by stereotypes" as a reason for apparent disparate treatment of minority

motorists on the Turnpike.  (Connell Cert., Ex. 19 (Nov. 16, 1998 Order on Pl.'s Mot. to

Suppress); Ex. 21 (Pl.'s Mot. for Reconsideration); Defs.' Statement of Material Facts, ¶ 25.)

Plaintiff's motion to reopen his suppression motion, relying on newly discovered evidence in the

form of Defendants Moore and Stephens's testimony on racial profiling by the New Jersey State

Police before the Black and Latino Caucus of the New Jersey legislature, was also denied.

(Connell Cert., Ex. 23 (Nov. 12, 1999 Order on Pl.'s Mot. to Reopen.))  Plaintiff's criminal case

resulted in a mistrial, and during new jury selection, the presiding judge granted Plaintiff's

motion to reopen discovery, following three Appellate Division decisions that were issued

concerning discovery in cases involving a racial profiling defense.  However, the state judge

denied Plaintiff's motion to reopen the suppression hearing on the sole basis that the New Jersey

State Police had a *de facto* policy of racial profiling at the time of Plaintiff's arrest.  (Connell

Cert., Ex. 25 (Dec. 7, 2000 Transfer Order.))

On February 2, 2001, the AG moved to dismiss 76 pre-trial cases, including Plaintiff's.

(Connell Cert., Ex. 26 (AG's Mot. to Dismiss); Defs.' Statement of Material Facts, ¶ 30.) In a

contemporaneous press statement, the AG noted that the cases involved allegations of racial

profiling, but that "[i]t is difficult, if not impossible, to discern which cases involve intentional

targeting of minorities when other drug courier profile-related factors existed to justify the stop."

(Connell Cert., Ex. 28 (Feb. 2, 2001 Announcement by Attorney General Farmer.))  On March

23, 2001, the criminal charges against Plaintiff were dismissed.  (Connell Cert., Ex. 31 (Mar. 23,

2001 Order dismissing Pl.'s Indictment.))

Defendant Verniero was the Attorney General of New Jersey at the time of Plaintiff's

arrest, and served in that capacity until 1999.  (Am. Compl., ¶ 10.)  Defendant Williams was the

Superintendent of the New Jersey State Police at the time of Plaintiff's arrest.  (Am. Compl., ¶

12.)  Defendant Zoubek became employed with the AG's Office as an Assistant Attorney

General on July 21, 1997.  (Connell Cert., Ex. 33 (Zoubek Aff.), ¶ 4.)

Defendants now file their Second Motion for Summary Judgment on Plaintiff's claims.

Plaintiff's Amended Complaint alleges: (1) malicious prosecution in violation of 42 U.S.C. §

1983 against Defendants Moore and Stephens;[2] (2) conspiracy by Defendants to violate

Plaintiff's civil rights under 42 U.S.C. § 1985; (3) adoption and maintenance of a pattern, policy,

custom, and practice of racial profiling in violation of 42 U.S.C. §§ 1983 and 1988 against

Defendants Verniero, Zoubek, and Williams; and (4) racial discrimination in violation of 42

---

[2]      Although Defendants address a portion of their argument on this claim with
respect to Defendants Verniero, Zoubek, and Williams, the Court notes that Plaintiff's Amended
Complaint, and his Opposition, makes clear that this Count is only brought against Defendants
Moore and Stephens.

U.S.C. §§ 1981 and 1983.[3]

## APPLICABLE LAW

A.   Standard of Review

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co.,

223 F.3d 202, 204 (3d Cir. 2000).  In deciding whether summary judgment should be granted, the

Court considers "pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits," and construes all facts and inferences in the light most favorable to

the nonmoving party.  Fed. R. Civ. P. 56(c); see also Curley v. Klem, 298 F.3d 271, 276-77 (3d

Cir. 2002).  To survive a motion for summary judgment, a plaintiff cannot rely merely on the

unsupported allegations of the complaint, and must present more than the "mere existence of a

scintilla of evidence" in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

B.   Section 1983 Liability

In order to prevail on a § 1983 claim, a plaintiff must prove that a defendant, while acting

under color of state law, committed or caused a violation of a constitutional or federal right.

West v. Atkins, 487 U.S. 42, 48-49 (1988); Piecknick v. Pennsylvania, 36 F.2d 1250, 1255-56

(3d Cir. 1994).[4]  There is no respondeat superior liability under § 1983 , so a defendant "must

---

[3]     Plaintiff concedes in his Opposition that his 42 U.S.C. § 1981 claim cannot be
sustained.  Accordingly, summary judgment is granted to Defendants on this claim.

[4]     42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State . . . subjects, or causes to be subjected, any citizen of the United

have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for

a constitutional violation in which he or she neither participated in nor approved." Baraka v.

McGreevey, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations and quotations omitted).  A

defendant's "personal involvement can be shown through allegations of personal direction or of

actual knowledge and acquiescence," which must be made with appropriate particularity. Rode

v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

C.      Section 1985 Liability

A plaintiff alleging conspiracy under § 1985(3) must prove: "(1) a conspiracy; (2) for the

purpose of depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in

furtherance of the conspiracy; (4) whereby a person is injured in his person or property or

deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson,

440 F.3d 131, 134 (3d Cir. 2006).

DISCUSSION

Defendants argue that Plaintiff's § 1983 claims fail against Defendants Verniero, Zoubek,

and Williams because Plaintiff cannot identify any personal involvement by these Defendants in

his criminal prosecution.  Defendants contend that Plaintiff cannot establish the elements of a

malicious prosecution or selective prosecution claim against Defendants Moore and Stephens,

and cannot point to any evidence in the record of discriminatory actions or statements by

Defendants.  Further, Defendants contend that Plaintiff's § 1983 claim that the New Jersey State

---

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

7

Police maintained a custom, policy, or practice of racial profiling fails because the Defendants

are individual state actors, rather than municipal entities.  Defendants also argue that Plaintiff's

conspiracy claim fails because there are no facts in the record supporting a finding that any of the

Defendants agreed to take any discriminatory actions towards Plaintiff in connection with his

criminal prosecution.

A.       Malicious Prosecution Claim (Count One)

The elements of a malicious prosecution claim under § 1983 are "(1) the defendant

initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant

initiated the proceeding without probable cause; (4) the defendant acted maliciously . . .; and (5)

the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a

consequence of a legal proceeding."  Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007).

Defendants argue that Plaintiff's malicious prosecution claim fails as a matter of law

because Plaintiff cannot show that the administrative dismissal of Plaintiff's criminal case

constituted a decision in his favor, a lack of probable cause, or that Defendants Moore and

Stephens acted with malice.  Plaintiff argues that there are genuine issues of material fact on each

of these elements that preclude a grant of summary judgment in Defendants' favor.

The parties disagree on whether the pre-trial dismissal of Plaintiff's criminal case

constitutes a favorable termination.  While Plaintiff is correct that "[a]ctual innocence is not

required for a common law favorable termination," Smith v. Holtz, 87 F.3d 108, 113 (3d Cir.

1996), in order for a malicious prosecution claim to survive, other courts to have considered this

question have focused on "whether the termination was or was not dispositive as to the accused's

innocence of the crime for which he was charged."  Hilton v. Kronenfeld, No. 04-6420, 2008

8

U.S. Dist. LEXIS 6314, at * 29 (D.N.J. Jan. 29, 2008) (citing Rubin v. Nowak, 590 A.2d 249,

251 (N.J. Super. Ct. App. Div. 1991)).  Here, the criminal charges against Plaintiff were

dismissed in an order that administratively terminated 76 pre-trial cases.  The press release issued

by the AG indicated that it was almost impossible to identify which of these cases involved stops

that were based on unlawful racial profiling tactics, rather than legitimate drug-related criteria.

Thus, the Court finds that the decision to administratively terminate Plaintiff's criminal case

involved an evaluation by the AG's Office of its resources and interests in pursuing prosecutions

where colorable issues of racial profiling existed.  See Hilton, 2008 U.S. Dist. LEXIS 6314, at

*27-*28 (citing cases finding that conviction vacated due to colorable issues of racial profiling

did not constitute favorable termination).

Because the Court finds that Plaintiff cannot demonstrate that his criminal prosecution

was terminated in his favor, and, therefore, Plaintiff's malicious prosecution claim fails, it need

not address the parties' remaining arguments with respect to other elements of Plaintiff's claim.

Accordingly, summary judgment is granted to Defendants Moore and Stephens on Count One.

B.      Racial Profiling and Selective Prosecution (Counts Three and Four)

Count Three, an allegation that Defendants engaged in a policy, practice, or custom of

racial profiling is directed towards Defendants Verniero, Zoubek, and Williams.  Count Four,

Plaintiff's selective prosecution claim, is brought against all defendants.  For ease of

convenience, the Court organizes its discussion of each of these claims according to the Trooper

Defendants, and Defendants Verniero, Zoubek, and Williams.

1.      Defendants Moore and Stephens

Plaintiff alleges that Defendants Moore and Stephens selectively prosecuted against him

on the basis of his race, in violation of his Equal Protection rights under the Fourteenth

Amendment of the Constitution.  Defendants argue that this claim fails because Defendants

Moore and Stephens, though arresting officers, played no role in the decision by the Mercer

County Prosecutor's Office to pursue criminal charges, and that Plaintiff cannot show that the

Troopers acted with a discriminatory intent or that their conduct had discriminatory impact.

To prove a selective prosecution claim, a plaintiff must show: (1) "evidence that persons

similarly situated have not been prosecuted"; and (2) "that the decision to prosecute was made on

the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that

the prosecution was intended to prevent his exercise of a fundamental right."  United States v.

Schoolcraft, 879 F.2d 64, 68 (3d Cir. 1989) (citations omitted).  Plaintiff relies on a New Jersey

state court decision, State v. Soto, 734 A.2d 350 (N.J. Super. Ct. 1996), and the Interim Report

issued by the AG's office in 1999, as evidence that similarly situated, non African-American,

suspects violated the law but were not prosecuted.  The Court disagrees that Plaintiff has

introduced relevant evidence to satisfy the first prong of his selective prosecution claim.  The

Soto decision, and Interim Report, at best, establish that the New Jersey State Police maintained

a *de facto* policy of racial profiling in the course of effecting traffic stops.  They do not, however,

provide insight as to whether similarly situated suspects of a different race than Plaintiff were

prosecuted where violations of the drug laws were found.  See Soto, 734 A.2d at 360

("[D]efendants have proven at least a *de facto* policy on the part of the State Police out of the

Moorestown Station of targeting blacks for investigation and arrest between April 1988 and May

1991."); Connell Cert., Ex. 20 (Interim Report) at 3-4, 7 (noting "*de facto* discrimination by

officers who may be influenced by stereotypes."))

Further, the Court finds that Plaintiff cannot demonstrate that Defendants Moore and Stephens acted with discriminatory intent in connection with the decision to prosecute him. Plaintiff has not identified a single race-based comment by either of the Troopers, and his deposition testimony suggests that he inferred discrimination based on his perception of the "unprofessional" manner in which he was treated during his arrest and search. This cannot satisfy the second prong of Plaintiff's selective enforcement claim.

Thus, the Court grants summary judgment in favor of Defendants Moore and Stephens on Count Four.

     2.     Defendants Verniero, Zoubek, and Williams

Defendants argue that the § 1983 claims against Defendants Verniero, Zoubek, and Williams fail because Plaintiff cannot identify any personal involvement by them in connection with his criminal prosecution, which was handled by the Mercer County Prosecutor's Office, or that they played any role in the underlying stop and arrest of Plaintiff. Defendants argue that Plaintiff cannot show that Defendants Verniero, Zoubek, or Williams acted in a discriminatory manner towards Plaintiff in the course of the criminal prosecution or his arrest. Further, Defendants contend that Plaintiff's § 1983 claim against these Defendants on the basis that the New Jersey State Police maintained a custom, policy, or practice of racial profiling is misplaced, because this theory of liability corresponds with § 1983 jurisprudence applicable to municipalities. Plaintiff argues that Defendants Verniero, Zoubek, and Williams may be held liable as supervisors "for Trooper Moore's and Stephen's actions in causing the Plaintiff to be maliciously prosecuted (Fourth Amendment-Count I) and selectively prosecuted (Fourteenth Amendment-Count IV) and Defendants are not entitled to summary judgment on . . . Count III of

Plaintiff's Amended Complaint or Count IV of Plaintiff's Amended Complaint." (Pl.'s Opp'n

Br. 43.)  Specifically, Plaintiff contends that Defendants Verniero, Zoubek, and Williams were

aware that racial profiling by the New Jersey State Police was a problem serious enough to

warrant, *inter alia*, an investigation by the United States Department of Justice, and Appellate

Division decisions that chronicled the problem.  Plaintiff argues that these Defendants' failure to

address it arises to deliberate indifference, for which they may be held liable.  In support of his

argument, Plaintiff relies on the Court's decision in White v. Williams, 179 F. Supp. 2d 405, 419

(D.N.J. 2002), in which Defendant Verniero's motion to dismiss the plaintiffs' § 1983 claims

was denied because the Court had found that plaintiffs had alleged that Defendant Verniero

"concealed the existence of racial profiling until April 1999 . . . [and] that Verniero's inaction

allowed racial profiling to continue, when he should have used his knowledge and authority to

rectify the problem."

        The Court finds Plaintiff's reliance on this case to be misplaced.  The plaintiffs in that

case brought claims of selective enforcement of New Jersey's motor vehicle laws in violation of

the Fourteenth Amendment, and search and seizures in violation of the Fourth Amendment,

against the defendants.  Id. at 418.  Here, in contrast, Plaintiff's claims are for malicious

prosecution, and selective prosecution, "in connection with his criminal prosecution." (April 18,

2008 Order at 5-6.)   After a Mercer County Grand Jury returned an indictment, the Mercer

County Prosecutor's Office prosecuted Plaintiff's criminal case.  Plaintiff has produced no

evidence that Defendants Verniero, Zoubek, or Williams were personally involved in the

decision to prosecute him.  Therefore, the Court grants summary judgment in favor of

Defendants Verniero, Zoubek, and Williams on Counts Three and Four.[5]

C.      Conspiracy (Count Two)

Defendants argue that Plaintiff's allegations that a conspiracy existed among some or all

of the Defendants to deprive Plaintiff of his constitutional rights are conclusory, and unsupported

by any factual evidence in the record.  Plaintiff argues that the Soto decision put Defendants

Verniero, Zoubek, and Williams on notice that the New Jersey State Police was engaged in racial

profiling, and that they failed to take any remedial measures to address the problem.  This failure,

Plaintiff contends, "affirmatively link[s]" Defendants Verniero, Zoubek, and Williams to "the

violation of the Plaintiff's rights under the Fourth and Fourteenth Amendments by Troopers

Moore and Stephens."  (Pl.'s Opp'n 43.)

The Court disagrees with Plaintiff's position.  Plaintiff does not point to any factual

evidence in the record that gives rise to an inference that any or all of the Defendants had an

agreement or understanding to engage in racial profiling, or to pursue Plaintiff's criminal

prosecution in violation of the Fourth and Fourteenth Amendments.[6]  Thus, summary judgment is

granted to Defendants on Count Two.

CONCLUSION

For the foregoing reasons, and for good cause shown,

------

[5]      The Court notes that Count Three of Plaintiff's Amended Complaint alleges that Defendants engaged in racial profiling in violation of 42 U.S.C. §§ 1983 and 1988.  42 U.S.C. § 1988 provides for, *inter alia*, attorney's fees to be awarded to the prevailing party.  Because this claim has been dismissed, Plaintiff's request for attorney's fees is moot.

[6]      To the extent that Plaintiff's arguments seem to focus on the practice of racial profiling in the course of traffic stops, the Court notes that its prior Orders in this action foreclose Plaintiff from recovering damages in connection with his 1997 stop and arrest.

IT IS on this 12th day of September, 2008,

ORDERED that the Defendants Peter Verniero, Paul Zoubek, Col. Carl A. Williams,

Trooper Glynn Moore, and Trooper Marc Stephens's Motion for Summary Judgment [110] is

GRANTED; and it is further

ORDERED that this case is CLOSED.


                                              <u>   s/ Anne E. Thompson         </u>

                                                ANNE E. THOMPSON, U.S.D.J.